And the next case is Hayes v.Dahkle. May it please the Court, my name is Hillary Cheddar Ames for Plaintiff Appellant Taheen Hayes. Mr. Hayes was molested, threatened, and beaten by prison officials, then ignored by Cork, the New York entity required to respond to his grievance appeals. And now defendants are saying he can't come to court. I'd like to discuss three issues, exhaustion, the sexual assault, and the retaliation. My first point is that defendant's exhaustion defense fails. Any way you slice it, as having exhausted or that remedies were unavailable, the result is the same. As discussed in the previous argument, the only rule with a legal basis is holding the state to the 30-day deadline it gave itself in the regulations. This court should join the consensus of every other federal appellate court to consider the issue and hold that when a prisoner has completed every step of the grievance process and the deadline the regulations give to respond has passed, that he is exhausted. Yeah, am I right in understanding that the great bulk, if not all, of this case law predates Ross? So we're really among the first to address the specific issue of how to think about this particular problem in a post-Ross world. So first, the cases that do predate Ross are basing their holdings on the principle in Jones that the regulations requirements define exhaustion, and that's not something that Ross rejects or in any way questions. And the post-Ross cases, most notably the Third Circuit and Shiflett last summer, made clear that this rule is still valid and the best option even after Ross. So applying this logical rule to Mr. Hayes' case, defendant's exhaustion defense fails. Hayes completed every step of the grievance procedure and court did not respond within the 30 days given it by the regulations. Rejecting defendant's exhaustion defense means that regardless of how this court decides on the merits of the first three retaliation claims, it must remand claims five and six for consideration on the merits. If there are no further questions on exhaustion, I will – Could you just speak to the status check provision? I take it one of your adversaries' arguments is that there was a process that your client could have availed himself of. Yes. And I believe – so the status check provision is the 701.5D3 Romanet 1 that counsel in the previous case referenced.  Sorry. 701.5D3 Romanet 1. Thanks. No problem. So counsel, in fact, admitted that the status check is not required and that the regulations contradict itself. So on its face, the status check provision does not provide a way for the prisoner to exhaust or find out when he has exhausted or to prompt court to respond. So the text of that provision makes clear its purpose, that if a grievant is worried that the prison did not send the appeal to Cork, that the prisoner can contact the prison, not Cork, quote, to confirm that the appeal was filed and transmitted to Cork. So as elsewhere in the regulations, this provision provides that in the case of a contingency, if the prisoner is concerned that the prison did not, in fact, forward the appeal to Cork, that it can contact the prison and make grievance program supervisor to confirm that it was, in fact, sent. So while the status check provision provides this option, it is not a requirement that affects the exhaustion analysis, and it – Did it cast into any doubt whether the – this seeming clarity of the 30 days – 30 days, right? Yes. That 30-day requirement is mandatory, final step as it sounds? It does not qualify Cork's obligation to respond within 30 days. Several points. First, textually, the status check provision comes before the provision setting the 30-day deadline. Second, on its face, the purpose of the status check is not a mechanism to prompt Cork to respond, as I quoted earlier. It's a way for a prisoner to confirm with a facility that he sent the appeal to Cork. And most importantly, the 45 versus 30 days, those timelines don't start running at the same time. So the status check says 45 days of filing the appeal, and Cork's deadline is within 30 days of receipt of appeal. Can I jump in on that, though? Didn't you guys jump the gun? Didn't your client jump the gun with respect to Claim 3, Monticello? So Claim 3 – Only 26 days after the Cork received the grievance, right? Yes. For Claim 3, Mr. Hayes had no way of knowing that the – that Cork had not received the grievance. As far as he knew, 30 days had passed, but correct. The logical rule that we are asking for in this case does not apply to Claim 3. It applies to Claims 2, 4, 5, and 6. But Claim 3 is one claim and not the focus of the case. It's not the focus. I agree with that. But what's the remedy on that one, then? The argument is still that remedies were unavailable to Mr. Hayes because of Cork delay. Well, they only had it for 26 days when he filed suit, right? Correct. And they did not respond for a further five months. Well, that turns out to be true, but he jumped the gun, right? You're conceding that. We would certainly have to concede on this record. He hadn't fully exhausted at the time he filed suit against Monticello. He had not exhausted that claim. Our argument would be that remedies were unavailable. But, yes, on this record, 27 days had passed from receipt of appeal, which he could not know at the time and didn't know at the time. But to return to the last point on the status check provision, status check is 45 days of filing the appeal. Cork's deadline is 30 days of receipt. The facility is required to forward the appeal to Cork within eight calendar days, so that explains part of that 15-day difference. And based on this record, we know that in some cases, claims can take far longer. So one of Hayes' claims took up to 23 days between the appeal being filed and Cork receipt. So that difference between the status check's 45 days and Cork's 30-day deadline are not inconsistent, and they don't provide any indication that a prisoner should wait any longer than 30 days for a Cork reply. Could you address the second point, was the sexual assault claim? Yes, with my remaining minute. So the second point is that Hayes' question. My second point is that Hayes' Eighth Amendment claims should go to a jury. So a reasonable juror could find that Officer Dahlke's pressing and groping served no penological purpose and that Dahlke intended to sexually gratify himself or humiliate Hayes based on three violations. First, Dahlke pressed his genitals up against Hayes' butt. This court in Crawford made clear that there can be no penological purpose to an officer pressing his genitals against an inmate. Second, Dahlke lifted up and groped around Hayes' testicles, which the prison pap frisk policy explicitly forbids. You cannot, as defendants declare, call it fully compliant with the pap frisk policy, and you can't call it a pap frisk by the book. Dahlke did exactly what the prison pap frisk policy forbids. Can I write an understanding in the record that this was not a case where Dahlke selected your client? He was required to do a frisk by virtue of searching the cell? Yes. But the fact that Dahlke had a legitimate reason to initiate the pap frisk, as a logical matter, we know that that cannot immunize all subsequent behavior. Right. It's one factor in the circumstances, though, that differentiates it from Crawford, which I'm just trying to look at the facts in both cases. Certainly. I see my time or I guess I have 20 seconds. You can answer my question. Okay. Thank you. So that is one difference from Crawford. But first, as a logical matter, we know that just because the pap frisk was required incident to a routine cell search, that it can't immunize everything that happens afterward. There were sexualized insults in both this case and Crawford. There was a pap frisk policy violation in both this case and Crawford. And in Hayes' case, there is this further piece of evidence, even beyond what happened in Crawford, although Crawford said it indicated no penological purpose, that Dahlke pressed his genitals up against Hayes. So because a reasonable juror could find that this violated the Eighth Amendment, this needs to go to a jury. And I believe I have reserved two minutes for rebuttal. Good morning, Your Honors. Hayes' view on what it means to exhaust would effectively eviscerate the exhaustion requirement in New York. According to Hayes, the court is bound to consider grievances within 30 days and on day 31, an inmate can rush to federal court, no matter where a court is in the process. Well, isn't that what New York basically said? No, Your Honor. If you want more time, why don't you just contact the legislature and get more time for yourself? Well, this isn't a matter of legislature, Your Honor. This is a matter of DOCS's own regulations. I misspoke. You're right. So just get the regs extended to a reasonable period of time, 60 days. DOCS has never had a reason to extend it because that regulation has only been directory under State law. State courts have interpreted this provision to mean that 30 days is aspirational, meaning that we hope we can get to it in 30 days. But if we don't, we can continue to process those grievances. Well, no one says you can't, I guess, continue to do it. But the point is that the prisoner has exhausted once you've failed to do it within the time period, right? So shall is the language of the reg, right? No, Your Honor. And if I could correct something from the ---- Could you just correct that? When you said no, is the language of the reg shall? Oh, the regulation says shall, but State courts ---- That's a yes. That is a yes. But State courts have interpreted it to be directory nonetheless. And in these cases, the PLRA does incorporate State law. Jones, the very case that my adversary relies on, says that whether or not a grievance remedy is available and how it operates is a question of State law. This Court itself has relied on decisional law from the State courts when interpreting how the grievance process works. So we're on solid footing that the question of how this process operates is, in fact, a matter of State law. That's correct, that we should look to State law and how State courts. Then when is a prisoner supposed to understand that he should proceed to court on his claim? The rule that we would articulate, Your Honor, is ---- and this recognizes a difference between exhaustion and availability. That's something that's come up in both of these arguments. Our rule is that you have not exhausted until you receive a decision from the court, but we believe that Ross is something that can deal with that effectively through the unavailability exception. So if you are awaiting a decision from Cork and you haven't received that decision and you believe that you are somehow prejudiced, come into court and argue that the process has been rendered unavailable. And that will be something that will get litigated under the circumstances of that case. And what's our test? Because it's going to get litigated in cases like this. What's our test to the district court? Is it a number like the case before was arguing? Like you're going to peg it at a year or ---- Oh, no, no, certainly not, Your Honor. And we don't agree with that position. The test would be it's not something that could be hard and fast because it falls within the limits of unavailability, but we would certainly believe that prejudice would fall into that. So if I could give you an illustrative example, if we had a situation where a prisoner was in need of immediate medical attention and they had tried to file a grievance and that was winding its way through the system, that seems like a very strong case that the process had hit a dead end, which Ross defines as the grievance mechanism is either unwilling or incate or unable to provide meaningful relief. And so in a situation where the inmate would be materially prejudiced in the litigation by that delay, that seems like something where you could come in and argue that the meaningful relief under Ross. But it seems like this is resurrecting looking at all the particulars of the case and precisely the way that Ross cautioned us against, meaning you're saying on a case by ---- if I'm understanding correctly, the rule is exhaustion does not take place until the State renders a decision. That's correct. But in the second stage, we should say on a case-by-case basis, if a prisoner feels that he or she is prejudiced by having not received a decision, they can go to court at any time and try and persuade under PLRA and try and persuade a court that they are prejudiced in a particular case based on the totality of the circumstances. Well, Your Honor, that would still fall within whether a mechanism was functionally unavailable. And our position would be that those cases would continue to be rare where a level of prejudice would be so much that the grievance mechanism was unavailable. Why is that logically connected, though? Unavailability strikes me as a question of procedure, of whether a given procedure is available to someone or not. If you're looking at prejudice, it's more a question of not whether it's available, but of whether this person really needs the relief. So I don't know. I'm thinking of someone who's absolutely bedridden and needs to be carried out to go to the bathroom. They only have to wait a week before the deadline has been blown because the prejudice would be severe. But somebody who just wants, I don't know, a toenail clipper, he'll have to wait two years because it's not all that severe for him to get it. But the procedures are the same. Well, not necessarily, Your Honor, because when we refer to prejudice, we mean prejudice to one's litigation prospects. So the PLRA is a mechanism to keep cases out of court, but not necessarily to hurt the inmate once the exhaustion process is either completed or excused. So in a certain situation where the delay is so profound or the circumstances of the delay is so egregious that it really does impact the inmate's litigation chances, that would be a situation where they would be able to come in and have the exhaustion be confused. So just describe to me what sort of prejudice you have in mind, like the memories of witnesses fading or something like that? Perhaps a witness who we understand or the inmate understands is going to be retiring and moving out of State. This seems like a pretty opaque process to me. And prisoners could be really screwed because they just didn't calculate what was reasonable, even though we seem to be having the same problem. Isn't this exactly the sort of thing Ross is concerned about? Ross is concerned. That's certainly one of the Ross factors, Your Honor. And we believe that this case doesn't fall into one of the Ross factors. Do you think it's pretty clear to a prisoner what they need to do? Yes, Your Honor. How much time they should allow Cork to decide before they go into Federal court? Not that, Your Honor. But we believe that it cannot be said that no reasonable inmate would understand that they need to wait for a decision from the Cork before they can come in. But if they wait too long, then they're out of luck, right? If they wait too long for a decision from the Cork? Yeah. Why would that be? Well, I mean, there's a statute of limitations, right? No. Under Gonzalez v. Hastie, Your Honor, well, the exhaustion process is winding its way through the statute of limitations, it's told. All right. So it could go then years, and in some cases that would be okay. Well, if the process was going years, let me give another illustrative example. The process is going, it's two years, you've done your status check, and you they're saying it's still in the queue, we don't know when we're going to get to it. That seems, again, like a much stronger situation to say that DOX is just unable to provide relief in that situation. So you know Mr. Hayes' case. I mean, let's forget about hypotheticals. How long before he suffers the prejudice you need? Can you give me the number? Your Honor, there is no number because he didn't ---- Well, how is the prisoner supposed to know what the number is? He's supposed to ---- You can't anticipate when he should file. How is he supposed to anticipate when he should file? He can file at any point that he believes that the prejudice can articulate those facts. All right. But you're saying you're going to fight it, right? Right. And then you're going to fight it and you're going to say it's not enough. My point is, if your point is that this is something that prejudice is a standard that we can all use to measure, then it should be something that's an ascertainable thing, right? But I'm assuming that nobody here in this courtroom right now can say as to Mr. Hayes, what's the number? What's the number of months or days or weeks that constitutes the prejudice that's going to trigger the unavailability requirement, right? If I could clarify my position, it is not ever going to be a particular number of months per se that allows a person to just walk into court without waiting for a court decision. It has to be ---- delay can be a relevant factor. We don't oppose that notion. But you're going to need to have additional circumstances to explain why that factor is either making the grievance process something that is unable to provide relief or why that delay is thwarting you. And we juxtapose this process in contrast to this Day 31 rule, where on Day 31, anybody can rush to court. We believe that that is not a faithful reading of what's available, because on Day 31, we have a system in New York State where court is both willing and able to decide grievances, and in Hayes' own case, they decided all four of the grievance appeals that were at issue. So he can't say that the process hit a dead end. It just didn't happen as soon as he would have liked. But the process was available in that respect, nor was he thwarted, because there's no evidence that that delay happened in bad faith. He got his determinations. He just got them late. As to whether the process is opaque, and I know my time is up, but if I could address this point, Your Honor. As to whether the process is opaque, our first argument is that Hayes himself never really articulated being confused about what to do. He just disagrees that he had to wait after the 30-day period expired. If you look at Hayes' opening brief, he mentions Williams only for the standard of review and in attacking whether or not the status check provision is mandatory. But if this Court wanted to reach that issue, it's not opaque for three different reasons. One, the grievance process does expressly contemplate or expressly authorize inmates to file lawsuits in a different section. That's 701.3i. That's what allowed the sexual assault claim to be exhausted. But notably, it doesn't include that language in 701.5d3. Two, we would argue that the status check provision itself envisions circumstances where the inmate hasn't received a response from Cork within 45 days, and it's advising the inmate to do something, but that something isn't file a Federal lawsuit. And three, we would rest on this ---- Alitono, I'm sorry. That something is just to check to make sure that it was received, right? That's correct, Your Honor. So but that's indicative that the regulations are saying to the inmate, here's what you do in that circumstances, but it's not saying go to Federal court. But it's not going to prompt any action by Cork, right? That check-in doesn't go to Cork, does it? It's not a nudge to Cork, say, hey, decide this, right? It's like going to the mailman and saying, hey, did you pick up my mail, right? But it's not checking with the recipient to make sure they're doing anything with the mail. That mechanism wouldn't be a way to force Cork to issue a determination out of that. Or even to alert them to the fact that you're kind of curious. Well, it would alert them that they're kind of curious, but it wouldn't. Cork gets the notice? Yeah. Cork would be the one who — Cork is going to be the one communicated with, and that's where the status comes from, where your grievance appeal is with the Cork. I was under the impression, because I don't have the break here, that it was simply checking with the prison to make sure they sent it. I have the regulation here. Contact the IGP supervisor to confirm the appeal was filed and transmitted to Cork. And so the IGP supervisor would confirm that it's filed and transmitted to Cork. But our record shows that there's correspondence where the Cork has said that your appeal remains pending. So there is a mechanism to do that. Under state law, once the 30 days passes, even though Cork has the right to continue working on it, rendering the process still available, you could file mandamus. You can get mandamus relatively quickly based on this. And we would also point this Court to its own decision in Neal v. Gord. For 18 years, this Court has held that to exhaust, you don't just need to file a grievance appeal. You need a decision. And that was an interpretation of the PLRA. So with these three factors, we're not operating in a complete and utter vacuum along the lines of what happened in Williams. Alitoson But if you're unable and or consistently unwilling to provide relief to aggrieved inmates within the regulatory prescribed time, isn't that a dead end? No, Your Honor. That wouldn't be, in our view, that wouldn't be a faithful reading of the availability exception. The availability or the availability language That's a quote from Ross. So the only thing I added was within the prescribed time period. I understand, Your Honor. And that additional language, that additional language takes it out of the Ross exception, because we're talking about within the regulatory time period. The PLRA wants a grievance process that is available, meaning that the prison is willing and able. So if the prison's time limit is 30 days, and on day 35, it's still working on your grievance appeal, then it is both willing and able to provide you with relief. It's not just not doing it in a speedy fashion. You're basically saying the test shouldn't be the dead end. It should be you're It's okay if you're stuck in bumper-to-bumper traffic for three years and don't move, because you're still not technically in the dead end yet. Our test would be the dead end is fact-specific. You would have to come up with circumstances to explain why this delay, compounded with additional facts, amounts to a dead end. But this deadline, which is directory, that wouldn't create a dead end if the court is still working on something. And we have authority there in the Ford case from the Seventh Circuit. There, there was a 60-day timeline, which also was directory. But it's textually different. Textually, it said that it was aspirational. It said something like, whenever possible. Do your regs say, whenever possible? Do they have a textual caveat that would, that would tell the prisoner, we ain't promising nothing here? Our regs don't have that language in it. That said, our State courts have read it in that way. Now, if this Court has any doubts that that is, in fact, the State court interpretation of State law, it could certainly certify that question to the court of appeals. But what this Court shouldn't be doing is telling the State courts that their interpretation of State law is wrong based on, on this Court's own opinion of what that language says. Because, after all, the grievance regulations are a form of State law. The State courts have a right to interpret them and have found, in cases involving exhaustion. In the previous case, they spoke about power. But, no, there are cases out there, Goldstein and Hendricks decided in January of this year, that have addressed this very question with respect to State law claims and found that exhaustion had not been completed, notwithstanding the court's failure to abide by the 30-day deadline, because that deadline was directory. And that is something that we believe, if that is how State law has interpreted it, then for PLRA purposes, this Court should treat that as this is how New York State grievance regulations operate. I think we get that argument. But it does take you directly, then, into Ross, and whether this process isn't opaque or unavailable for other reasons, if the only way you know when to go to court is something that doesn't seem describable in a case like this, the colloquy we just had, when would Mr. Hayes know to go to court? Well, we don't know. He has to wait and see what prejudice he suffers by virtue of the delay. That doesn't tell the prisoner very much about how to use these regulations. Well, Hayes does have a mechanism under State law to request mandamus. He could do that on Day 31 if he wants. So that's available under the State law. Administrative procedures, you believe? That's a right available to him, Your Honor. Right available. Is that part of the administrative procedures? No, Your Honor. That's not something that the grievance regulations explicitly discuss, no. Are you suggesting that that judicial step is part of the exhaustion requirement? No, Your Honor. But we're saying that once Day 31 expires, that Mr. Hayes doesn't have to sit and guess. He already knows our position, if I could maybe sum it up in a sentence, our position is that it is clear that when Day 31 comes and there's no decision on the grievance appeal, Mr. Hayes knows that to exhaust for the purposes of the PLRA, he needs a decision. Now, just like any other inmate who comes to court without having exhausted, he can raise his entitlement to an excuse for exhaustion for any reason that he sees fit. But if he's going to be relying on a delay where the court is otherwise willing and able to decide his grievance appeals as it did here, then he's going to have to come up with circumstances that are compelling enough to explain why the court's failure to decide his grievance has rendered the process functionally unavailable. Thank you. So briefly, I hope, two points. First, the status check provision and second, counsel's proposed rules. The status check provision is there to confirm with the facility that it sent the appeal to court. The text of that provision makes that quite clear. Counsel referenced correspondence with the court in the record, but that's not related to the status check provision. Second, counsel argued that there are some alternatives that Hayes could have used. So counsel argued that the rule on exhaustion should be that a prisoner has exhausted when he receives a court decision. There are several district court cases suggesting that. There are also a number of district court cases saying exactly the opposite. And ultimately, that's not the regulation New York wrote. Second. The argument that there are State court decisions that say that this is what the regulation means, how should we consider that line of argument? As Your Honor mentioned earlier, that runs into an opacity problem under Ross. That's not on the face of the regulations that New York wrote and handed to the prisoner. The prisoner has no way of knowing what those intermediate court cases said and that they indicate anything but the prisoner. But can we decide this case without going down the Ross road? Yes. The regulations. Do you really think we can say, notwithstanding New York State courts interpreting their own regs, the New York State regs, we can say that exhaustion occurs after the 30-day or 45-day period, depending on the reg? As counsel in the previous case mentioned, the New York cases do not refer to the PLRA and are saying that Cork is not deprived of jurisdiction at the end of the 30-day timeline, and we're not arguing that it is. We're simply saying that for purposes of the PLRA, the prisoner can proceed to court. Cork still has jurisdiction and could issue a decision. So it's not inconsistent with those cases. And again, because there is no way for a prisoner to know by looking at the regulations, what that shall means, anything other than shall. Well, that's, I think, the Ross avenue that I was talking about. Right. Okay. So I believe my time has concluded. Thank you. Thank you both. Nicely argued.